**FILED**
Aug 28 2015, 8:33 am

CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEY FOR APPELLANTS

E. Scott Treadway
EST Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Joshua D. Hague
Krieg DeVault LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Winona Powder Coating, Inc., and Winona PVD Coatings, LLC, | August 28, 2015 |
| *Appellants-Petitioners,* | Court of Appeals Case No. 93A02-1503-EX-160 |
| v. | Appeal from the Indiana Utility Regulatory Commission |
| Spark Energy Gas, LP, | The Honorable Angela Rapp Weber, Commissioner |
| *Appellee-Respondent* | The Honorable Jeffery Earl, Administrative Law Judge |
| | Indiana Utility Regulatory Commission Cause No. 44515 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Following the deregulation of the natural-gas industry, choice programs emerged to provide Indiana customers with the opportunity to select their gas suppliers. In 2013, Winona Powder, an Indiana company engaged in the powder-coating business, and Winona PVD, an Indiana company engaged in the painting of automobile wheels (collectively "Winona"), entered into agreements to purchase natural gas from Spark Energy Gas through a choice program offered by Northern Indiana Public Service Company (NIPSCO). When Spark's invoices were more than Winona expected, Winona filed a complaint with the Indiana Utility Regulatory Commission (the IURC or the Commission). The Commission concluded that it did not have jurisdiction over the case and dismissed it without prejudice.

[2] Winona appeals. Because Spark is not a public utility, the Commission does not have statutory jurisdiction over the case. In addition, neither the Supplier Aggregation Service Agreement (SASA)—including its Code of Conduct—between NIPSCO and Spark, nor the Natural Gas Sales Agreement between Spark and Winona vest the Commission with jurisdiction. We therefore affirm the Commission's dismissal of the case without prejudice.

# Facts and Procedural History

[3] In August 2012, pursuant to NIPSCO's choice program, Spark and NIPSCO executed a SASA, which provides that it was entered into solely for the benefit

of Spark and NIPSCO and "should not be deemed to vest any rights, privileges or interests of any kind or nature to any third party, including but not limited to the Customers or Customer groups that Choice Supplier establishes under this Agreement." Appellant's App. p. 161. The SASA also directs supplier Spark to include in its customer-supply agreement a statement advising customers of their right to contact the Office of the Utility Consumer Counselor (OUCC) with any questions, concerns, or conflicts regarding Spark or the program. In addition, the SASA requires Spark to list the OUCC's toll-free number, full name, website address, and a statement informing the customer that the OUCC is the state agency with the statutory responsibility for representing consumers on all utility matters.

[4] Section 13 of the SASA further sets forth the process to resolve customer complaints that Spark has either violated the SASA or engaged in fraudulent, deceptive, or abusive acts. Specifically, initial complaints from the supplier must start with Spark. If a resolution is not reached, NIPSCO then investigates the facts underlying the allegation. If it finds a violation of the SASA or fraudulent, deceptive, or abusive acts, NIPSCO can impose sanctions. If sanctions are imposed, Spark may seek relief from the Commission.

[5] The SASA also includes a Code of Conduct, which regulates the relationship between Spark and its customers, including Winona, and contains two sections concerning customer complaints. Section 6 provides that all customer complaints received by NIPSCO are governed by Section 13 of the SASA. Section 7 governs complaints received by the Commission or the OUCC.

Specifically, complaints received by the Commission and referred to NIPSCO are handled in accordance with the Commission's rules, and complaints received by the OUCC and referred to NIPSCO are handled in accordance with Section 13 of the SASA.

[6] On December 23, 2013, Spark and Winona entered into a Natural Gas Sales Agreement, which provides that the price of the gas will be "First of the Month Natural Gas Intelligence Chicago Citygate Index plus $0.045 per therm." Appellant's App. p. 20. This agreement directs customers to contact the customer-service department with questions or concerns about their monthly bills. A representative then attempts to work out a mutually satisfactory resolution. However, if the dispute is not resolved to the customer's satisfaction, the customer may contact the OUCC. The Natural Gas Sales Agreement further provides that it is governed and enforced by Texas law and any disputes that arise under the terms of the agreement will be decided by a Houston, Texas court. If the dispute cannot be resolved, the issues may be submitted by either party to mediation, non-binding arbitration, or court.

[7] Spark began selling natural gas to Winona pursuant to the terms of the agreement and submitted invoices for payment. Winona, however, disputed the amount of charges contained in the invoices and refused to pay the full amount. Winona and Spark apparently met in an attempt to informally resolve the dispute, but their efforts proved unsuccessful.

[8] On July 15, 2014, Winona filed a complaint against Spark with the Commission seeking a preliminary "determination as to the scope of [the Commission's] jurisdiction in this matter and the procedures to be followed by Winona in pursuing its Complaint against Spark." *Id.* at 13. Winona attached several exhibits in support of its complaint, including the sales agreement, gas bills sent from Spark to Winona, and information from Spark's and NIPSCO's websites. Section 9 of the terms of service attached to the sales agreement provides that NIPSCO will continue to deliver Winona's gas, read its meter, and respond to its system concerns. According to Spark's website, local utilities physically distribute and deliver the gas to the customer's home and maintain the pipes to keep the system safe and operating. According to NIPSCO'S website, regardless of which company the customer chooses to supply its gas, NIPSCO still delivers it to the customer's home or business.

[9] Regarding the contents of the complaint, Winona claimed that Spark misrepresented its pricing structure to induce Winona to switch from NIPSCO to Spark as its natural-gas supplier and that Spark has charged Winona excessive fees for the gas. Winona further claimed that Spark engaged in deceptive conduct because the price it charged Winona for natural gas did not bear any reasonable relationship to the price Spark paid for the natural gas.

[10] Winona asked the Commission to determine that it had jurisdiction over the matter and to declare that the Natural Gas Sales Agreement between Spark and Winona was void and unenforceable because of Spark's actions. Winona also asked the Commission to determine that Spark misrepresented its pricing

structure and capabilities to Winona and that Winona's financial liability to Spark was limited to natural gas priced at rates in effect for NIPSCO for the time periods in question.

[11] Two weeks later, NIPSCO filed a petition to intervene, which was granted. Spark responded to Winona's complaint with a motion to dismiss wherein it argued that this was a "simple breach of contract and fraud case where [Winona sought] to invoke this Commission's jurisdiction to avoid the contractual obligation to litigate such claims in Texas." *Id.* at 112. Winona responded that Spark had omitted any reference to the choice program, the SASA, or the Code of Conduct. Winona also attached to its response a printout of frequently asked questions from Spark's website, which explained that Spark "buy[s] natural gas from the people who process it, then sell[s] that gas to people like you. Your utility's job includes managing pipes, lines and other infrastructure to get the gas safely and reliably to homes and businesses." *Id.* at 258. The printout further explained that Spark uses its "buying power and expert knowledge of energy markets to purchase natural gas at very competitive prices, and then passes the savings on to [the customer]." *Id.*

[12] At the outset, the Commission noted that because Winona's complaint presented a purely legal question and the parties did not dispute the relevant facts, a hearing would not assist it in reaching a decision. Accordingly, the Commission issued an order without holding a hearing. In the order, the Commission found that because Spark is not a public utility, there is no statutory authority providing the Commission with jurisdiction over the case.

The Commission also found that the SASA, including the Code of Conduct, is a contract between Spark and NIPSCO and does not give the Commission jurisdiction over this case. Last, the Commission found that the sales agreement between Spark and Winona did not create jurisdiction over the case because it refers to filing a complaint with the OUCC, which is separate from the Commission, and reference to one agency may not be understood to implicitly refer to the other.

[13]    The Commission's order concluded as follows:

> Based on our review of the purported sources of Commission jurisdiction designated by Winona in its response, we conclude that the Commission does not have jurisdiction over the dispute between Winona and Spark. The SASA, Code of Conduct, and Sales Agreement provide the proper methods for Winona to resolve its dispute, which include filing a complaint with NIPSCO or the OUCC or submitting the dispute to mediation, non-binding arbitration, or court.
>
> Therefore, we dismiss this case without prejudice.

*Id.* at 9. Winona now appeals.

# Discussion and Decision

[14]    The General Assembly created the Commission primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature. *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.,* 907 N.E.2d 1012, 1015 (Ind. 2009). Its authority includes implicit powers necessary to effectuate the

statutory regulatory scheme. *U. S. Gypsum, Inc. v. Ind. Gas Co. Inc.,* 735 N.E.2d 790, 795 (Ind. 2000). Still, as a creation of the legislature, the Commission may exercise only that power conferred by statute. *Id.*

[15] An order of the Commission is subject to appellate review to determine whether it is supported by specific findings of fact and by sufficient evidence, as well as to determine whether the order is contrary to law. *Id.* On matters within its jurisdiction, the Commission enjoys wide discretion. *Id.* The Commission's findings and decisions will not be lightly overridden just because we might reach a contrary opinion on the same evidence. *Id.*

# I. Statutory Jurisdiction

[16] Winona first contends that the Commission erred in dismissing its case without prejudice. Specifically, Winona argues that the Commission has statutory jurisdiction because Spark is a public utility.

[17] Indiana Code section 8-1-2-87.5 provides in relevant part as follows:

> (a) For purposes of this section, "transportation of gas" means physical transmission, exchange, backhaul, displacement, or any other means of transporting gas, including gathering.

> (b) Any person, corporation, or other entity that:

>> (1) is engaged in the transportation of gas from outside Indiana for direct sale or delivery to any end use consumer or consumers within this state;

(2) is engaged in the transportation of gas solely within this state on behalf of any end use consumer or consumers; or

(3) is an end use consumer engaged in the transportation within this state of gas owned or acquired by such end use consumer for use in this state, other than transportation on the premises where the gas is consumed;

is a public utility . . . .

[18]    The Commission's order noted that in order to qualify as a public utility pursuant to the terms of this statute, the person, corporation, or other entity has to be engaged in the transportation of gas.   Based on evidence before it, including evidence that NIPSCO continued to deliver Winona's gas even though Winona purchased the gas from Spark, the Commission concluded that the evidence was:

> clear that Spark purchases natural gas from suppliers and resells it to Winona, but NIPSCO, not Spark, transports and delivers the gas to Winona.  Therefore . . . Spark is not a public utility under Ind. Code § 8-1-2-87.5, and the statute does not provide the Commission jurisdiction over the subject matter of the case.

Appellant's App. p. 6.  Mindful of its wide discretion, we find that the Commission's decision is supported by sufficient evidence and is not contrary to law.[1]  *See Gypsum*, 735 N.E.2d at 795.

---

[1] Indiana Code section 8-1-2-1 defines a public utility as an entity that "may own, operate, manage, or control any plant or equipment within the state [for the] production, transmission, delivery, or furnishing of

# II. SASA

[19] Winona also contends that the Commission has jurisdiction over this case pursuant to the SASA. Our review of the evidence reveals that the SASA governs the relationship between Spark and NIPSCO, and by its terms does not vest any rights, privileges, or interests in Spark's customers. In addition, the SASA sets forth the process to resolve customer complaints that Spark has either violated the SASA or engaged in fraudulent, deceptive, or abusive acts. Initial complaints from the supplier must start with Spark, and if a resolution is not reached, NIPSCO investigates the facts underlying the allegation. The SASA also directs Spark to include in its customer-supply agreement a statement advising customers of their right to contact the OUCC with any concerns or conflicts regarding Spark.

[20] Based on this evidence, the Commission concluded that the "SASA does not purport to create Commission jurisdiction over a dispute between Winona and

---

heat, light, water, or power." The Commission correctly pointed out that Winona did not designate any evidence that Spark owns, operates, manages, or controls any plant or equipment within the State for natural-gas utility service. Rather, the evidence reveals that Spark purchases natural gas from suppliers and sells it to Winona, but NIPSCO transmits, delivers, and furnishes the natural gas to the customers using its own plant and equipment. The Commission's order that Spark is not a public utility under Indiana Code section 8-1-2-1, and that the statute does not give the Commission jurisdiction over Spark is supported by specific findings of fact and by sufficient evidence and is therefore not contrary to law.

We further note that Winona is mistaken that the Commission has statutory jurisdiction over all consumer disputes about utility bills arising under the choice program simply because the contract for the supply of a utility arose under the choice program. We agree with Spark that "[s]uch a result does not fulfill the legislature's intent that the Commission would [] act 'primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature.'" Appellee's Br. p. 19 (quoting *U.S. Steel Corp.,* 907 N.E.2d at 1015). The contracts between (1) NIPSCO and the supplier and (2) the supplier and the customer provide the remedies for such disputes.

Spark." Appellant's App. p. 7. Rather, the SASA offers customers the option of contacting either NIPSCO or the OUCC with specific complaints of misconduct. Finding nothing in the SASA that gives the Commission jurisdiction over this dispute, we conclude that the Commission's order on this issue is not contrary to law. *See Gypsum*, 735 N.E.2d at 795.

# III. Code of Conduct

Winona further contends that the SASA's Code of Conduct requires the Commission to exercise jurisdiction over the dispute. However, our review of the evidence reveals that the Code of Conduct contains two sections concerning customer complaints. Section 6 provides that all customer complaints received by NIPSCO are governed by Section 13 of the SASA. Section 7 governs complaints received by the Commission or the OUCC. Specifically, complaints received by the Commission and referred to NIPSCO are handled in accordance with the Commission's rules, and complaints received by the OUCC and referred to NIPSCO are handled in accordance with Section 13 of the SASA.

The Commission reviewed these sections and concluded that the Code of Conduct does not give the Commission jurisdiction over Spark. Rather, the Commission concluded in its order that the Code of Conduct requires a

customer to first seek resolution of a complaint through NIPSCO.[2]  This order is supported by specific findings of fact and by sufficient evidence and is therefore not contrary to law.

# IV. Sales Agreement

Last, Winona contends that the sales agreement it executed with Spark gives the Commission jurisdiction over the issues.  However, our review of the evidence reveals that the sales agreement directs customers with unresolved billing disputes to the OUCC, not to the IURC.  The Commission pointed out in its order that the OUCC and the IURC are "separate state agencies with different charges, and reference to one may not be understood to implicitly refer to the other," and concluded that the "Sales Agreement does not create Commission jurisdiction over Spark or the subject matter of this case." Appellant's App. p. 8.  This part of the order is also supported by specific findings of fact and by sufficient evidence and is therefore not contrary to law. *See Gypsum*, 735 N.E.2d at 795.

Affirmed.

Robb, J., and Pyle, J., concur.

---

[2] Winona argues that it contacted NIPSCO regarding its complaint, and NIPSCO "seemingly rejected the idea that NIPSCO had any role in addressing the dispute between Spark and Winona[.]" Appellant's Br. p. 11.  However, we find no evidence in the record to support this claim.