

FILED

Dec 31 2018, 11:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. David Agnew
Lorch Naville Ward LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE
INDIANA-AMERICAN WATER
COMPANY

David L. Pippen
General Counsel
Indiana-American Water
Company
Greenwood, Indiana

Peter J. Rusthoven
Nicholas K. Kile
Hillary J. Close
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CITY OF CHARLESTOWN
Karl L. Mulvaney
Alex E. Gude
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

David T. McGimpsey
Bingham Greenebaum Doll LLP
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NOW!, Inc.,<br><br>*Appellant-Intervenor,*<br><br>     v.<br><br>Indiana-American Water Company, Inc., and the City of Charlestown, Indiana,<br><br>*Appellees-Petitioners,*<br><br>and<br><br>Indiana Office of Utility Consumer Counselor,<br><br>*Appellee-Respondent.* | December 31, 2018<br><br>Court of Appeals Case No. 18A-EX-844<br><br>Appeal from the Indiana Utility Regulatory Commission<br><br>Hon. James F. Huston, Interim Chairman<br>Hon. Sarah E. Freeman, Commissioner<br>Hon. Angela Rapp Weber, Commissioner<br>Hon. David E. Ziegner, Commissioner<br><br>Hon. Carol Sparks Drake, Administrative Law Judge<br><br>Cause No. 44976 |

**Sharpnack, Senior Judge.**

# Statement of the Case

The City of Charlestown, Indiana, executed an agreement to sell its water utility to Indiana-American Water Company, Inc., subject to approval by the Indiana Utility Regulatory Commission. NOW!, Inc., a not-for-profit entity opposed to the sale, filed a petition asking the IURC to reject the agreement. Charlestown and Indiana-American filed a separate petition asking the IURC to approve the sale.

The IURC consolidated the petitions, determined that the sale of the water utility was in the public interest, and issued an order approving the transaction.

NOW appeals.  We conclude the IURC's order is supported by the facts and fulfills statutory requirements.  We affirm.

# Issues

NOW raises three issues, which we restate as:

> I.      Whether the IURC erred in determining that the purchase price for the utility was reasonable.

> II.      Whether the IURC erred in determining that Charlestown substantially complied with the statute requiring that information related to utility appraisals be made available to the public.

> III.      Whether the IURC erred in determining that Charlestown complied with the statute governing public hearings to discuss sales of municipal utilities.

# Facts and Procedural History

Charlestown is a community of approximately 8,000 people in Clark County, Indiana.  The city has owned and operated a water utility for over fifty years.  The utility's equipment consists of a well field, four raw water wells, 15,000 feet of raw water transmission main, a 1.5 million gallon ground storage tank, a pump station and treatment facility, a 250,000 gallon stand pipe, a 500,000 gallon elevated tank, approximately 290,000 feet of water mains, 488 valves, and 296 hydrants.  The system serves 2,898 metered accounts.

[5]     Over the years, Charlestown neglected to maintain its water distribution system, and as a result manganese and other minerals have built up in storage tanks and water mains, causing some utility customers to see "brown water" in their taps. Appellant's App. Vol. 3, p. 6. The city also experienced water main leaks. The problem was exacerbated by Charlestown's failure to maintain adequate records, such as a map of the water system, prior to 2000.

[6]     Charlestown officials, including Mayor G. Robert Hall, attempted to correct the problems, but as of 2017 they still encountered two to three water main leaks per month and eight to ten complaints of brown water per month. The mayor consulted with an engineer, who estimated that eliminating the brown water problem and addressing other defects would cost $7.2 million. City officials ultimately concluded that Charlestown could not fix the water utility's failing infrastructure without a large increase in customer rates.

[7]     Indiana-American is an Indiana corporation based in Greenwood, Indiana, that provides water utility services to approximately 300,000 customers across Indiana, including in Clark County. In the spring of 2016, Mayor Hall met with Indiana-American to discuss the sale of Charlestown's water utility. City officials concluded Indiana-American could fix the utility infrastructure problems with fewer increases in customer rates because the company could spread improvement costs across its entire customer base.

[8]     While discussions were ongoing, Charlestown's engineering contractor, Saegesser Engineering, obtained appraisals of the water utility. The appraisers'

reports were provided to Charlestown in November 2016. The appraisers "recertified" their reports and returned them to Charlestown on April 1, 2017. Appellant's App. Vol. 3, p. 18. The appraisers valued the utility's property at $13,449,711. *Id.* at 158.

[9] Charlestown and Indiana-American negotiated a purchase agreement, subject to the IURC's approval of the transaction and the IURC's recognition of the full purchase price in Indiana-American's net original cost rate base. Charlestown agreed to turn over all the utility's assets, except the well fields, which Charlestown would lease to Indiana-American by separate agreement. Indiana-American agreed to pay $13,403,711 for Charlestown's water system, an amount equal to the total appraised value minus the appraised value of the wells and well pumps that Charlestown would retain and lease to Indiana-American. Appellant's App. Vol. 2, pp. 16-17.

[10] The Charlestown City Council held a meeting on April 3, 2017, during which they scheduled a public meeting for May 11, 2017, to discuss the sale. Notice of the meeting was published in the local newspaper on April, 11, 2017. The notice stated that a copy of "the appraisal" was available for review in the Charlestown Clerk-Treasurer's office. Appellee Charlestown's App. Vol. 2, p. 125.

[11] The public meeting was held as scheduled. On July 3, 2017, the city council introduced an ordinance to sell the utility and then adopted the ordinance on July 6, 2017.

[12]     On July 7, 2017, NOW filed a complaint against Charlestown and Indiana-American under IURC cause number 44964, asking the IURC to reject the utility sale. On August 17, 2017, Charlestown and Indiana-American filed a joint petition and case-in-chief under IURC cause number 44976. Charlestown and Indiana-American asked the IURC to approve their transaction and to include the purchase price and related costs in Indiana-American's rate base for ratemaking purposes. The IURC consolidated the cases under cause number 44976, granting NOW permission to intervene.

[13]     Next, NOW moved to strike or dismiss Charlestown and Indiana-American's case-in-chief. The Indiana Office of the Utility Consumer Counselor (OUCC), an entity that represents the public in IURC proceedings, appeared in the case and moved to dismiss Charlestown and Indiana-American's joint petition. The IURC denied the motions of NOW and the OUCC. NOW next filed a motion for summary judgment.

[14]     The IURC presided over a three-day evidentiary hearing, during which Charlestown, Indiana-American, NOW, and the OUCC presented evidence. After the hearing, the parties submitted proposed orders. The IURC issued an order concluding, in relevant part:

> 1. Joint Petitioners are authorized to consummate the acquisition of the Charlestown Water System by Indiana-American on the terms described in the Asset Purchase Agreement and as discussed herein.

2. The acquisition of the Charlestown Water System by Indiana-American on the terms and conditions described in the Asset Purchase Agreement and in the evidence is in the public interest as defined in Ind. Code § 8-1.5-2-6.1(d) and (e), and the same is approved.

3. Indiana-American is authorized to record for ratemaking purposes as net original cost rate base of the assets being acquired an amount equal to the full purchase price, actual incidental expenses, and other actual costs of acquisition reasonably incurred, allocated among utility plant in service accounts as Indiana-American proposed.

4. Indiana-American is authorized to charge customers currently served by the Charlestown Water System the current rates and charges and apply the same rules and regulations for water service and private and public fire service applicable in Indiana-American's Area One rate group on file with and approved by the Commission, as the same are in effect from time to time.

5. Indiana-American is authorized to reflect the acquisition of the Charlestown Water System on its books and records as of the closing by making the accounting and journal entries described in Attachment GMV-R1, as adjusted to actual, reasonable incidental expenses and other actual costs of the acquisition.

6. The net original cost, as defined herein, of the acquired property shall be used for accounting, depreciation, and rate base valuation purposes after closing.

7. Indiana-American is authorized to apply its depreciation accrual rates on and after the closing date of the acquisition to

depreciable property purchased from Charlestown pursuant to the Asset Purchase Agreement.

8. Indiana-American is authorized to encumber the properties comprising the Charlestown Water System with the lien of Indiana-American's mortgage indenture.

9. The relief sought in NOW's Amended Complaint is denied.

10. NOW's Motion for Summary Judgment is denied.

Appellant's App. Vol. 2, pp. 51-52.  This appeal followed.[1]

# Discussion and Decision

## I. Standard of Review

The General Assembly created the IURC primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature.  *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009).  The IURC's assignment is to ensure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana.  *Id.*

When reviewing an IURC order, we must first determine whether the order contains "specific findings on all the factual determinations material to its ultimate conclusions." *Ind. Gas Co. v. Ind. Fin. Auth.*, 999 N.E.2d 63, 66 (Ind.

---

[1] The OUCC is not participating in this appeal.  We have included the OUCC in the case's caption because "[a] party of record in the trial court or Administrative Agency shall be a party on appeal."  Ind. Appellate Rule 17(A).

2013) (quotation omitted). We then determine whether the findings of fact are supported by substantial evidence in the record. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the IURC's findings. *Id.* Factual findings will stand unless no substantial evidence supports them. *U.S. Steel*, 907 N.E.2d at 1016.

[17] Both Charlestown and Indiana-American claim that we should defer to the IURC's interpretations of statutes that it is charged with enforcing. To the contrary, the Indiana Supreme Court recently held that appellate courts review questions of law de novo, with "no deference" to an administrative tribunal. *NIPSCO Indus. Group v. N. Ind. Pub. Serv. Co.*, 100 N.E.3d 234, 241 (Ind. 2018), *on reh'g*. "Separation-of-powers principles do not contemplate a 'tie-goes-to-the-agency' standard for reviewing administrative decisions on questions of law." *Id.*

## II. Reasonableness of Sale Price

[18] NOW argues that the IURC misapplied the statutes that govern the sale of utilities. Specifically, NOW claims that the IURC erred in determining that the sale price of Charlestown's water utility was reasonable, as that term is defined by statute, and further claims that the proposed sale cannot move forward unless Charlestown residents approve the transaction in a referendum.

[19] The parties agree that Charlestown's proposed sale of its water utility is governed by Indiana Code section 8-1.5-2-1 et seq., which governs the sale of

utilities by municipalities. In particular, Indiana Code section 8-1.5-2-6.1 (2016) governs the sale of "nonsurplus utility property." It provides:

> (a) This section applies to a municipality that adopts an ordinance under section 5(d) of this chapter after March 28, 2016.
>
> (b) Before a municipality may proceed to sell or otherwise dispose of all or part of its nonsurplus utility property under an ordinance adopted under section 5(d) of this chapter, the municipality and the prospective purchaser must obtain the approval of the commission under this section.
>
> (c) As part of the sale or disposition of the property, the municipality and the prospective purchaser may include terms and conditions that the municipality and the prospective purchaser consider to be equitable to the existing utility customers of:
>
> (1) the municipality's municipally-owned utility; and
>
> (2) the prospective purchaser;
>
> as applicable.
>
> (d) The commission shall approve the sale or disposition of the property according to the terms and conditions proposed by the municipality and the prospective purchaser if the commission finds that the sale or disposition according to the terms and conditions proposed is in the public interest. For purposes of this section, the purchase price of the municipality's nonsurplus utility property shall be considered reasonable if it does not exceed the appraised value set forth in the appraisal required under section 5 of this chapter.

(e) The following apply to the commission's determination under subsection (d) as to whether the proposed sale or disposition according to the proposed terms and conditions is in the public interest:

(1) If:

(A) the municipality's municipally owned utility petitions the commission under IC 8-1-30.3-5(d); and

(B) the commission approves the municipality's municipally owned utility's petition under IC 8-1-30.3-5(c);

the proposed sale or disposition is considered to be in the public interest.

(2) If subdivision (1) does not apply and subject to subsection (h), the commission shall consider the extent to which the proposed terms and conditions of the proposed sale or disposition would require the existing utility customers of either the prospective purchaser or the municipality's municipally owned utility, as applicable, to pay rates that would subsidize utility service to the other party's existing customers. If the commission determines that:

(A) the proposed terms and conditions would result in a subsidy described in this subdivision; and

(B) the subsidy would cause the proposed terms and conditions of the proposed sale or disposition not to be in the public interest;

the commission shall calculate the amount of the subsidy that would result and shall set forth in an order under this section such changes to the proposed terms and conditions as the

commission considers appropriate to address the subsidy. The prospective purchaser and the municipality shall each have thirty (30) days from the date of the commission's order setting forth the commission's changes to either accept or reject the changes. If either party rejects the commission's changes, the proposed sale or disposition is considered not to be in the public interest.

(3) In reviewing the proposed terms and conditions of the proposed sale or disposition under either subdivision (1) or (2), the commission shall consider the financial, managerial, and technical ability of the prospective purchaser to provide the utility service required after the proposed sale or disposition.

(f) As part of an order approving a sale or disposition of property under this section, the commission shall, without regard to amounts that may be recorded on the books and records of the municipality and without regard to any grants or contributions previously received by the municipality, provide that for ratemaking purposes, the prospective purchaser shall record as the net original cost rate base an amount equal to:

(1) the full purchase price;

(2) incidental expenses; and

(3) other costs of acquisition;

Allocated in a reasonable manner among appropriate utility plant in service accounts.

(g) The commission shall issue a final order under this section not later than two hundred ten (210) days after the filing of the parties' case in chief.

(h) In reviewing a proposed sale or disposition under subsection (e), the commission shall determine whether the factors set forth in IC 8-1-30.3-5(c) are satisfied as applied to the proposed sale or disposition of the municipality's nonsurplus municipally owned utility property for purposes of section 5(m) of this chapter. If the commission determines that the factors set forth in IC 8-1-30.3-5(c):

(1) are satisfied as applied to the proposed sale or disposition, section 5(g) through 5(k) of this chapter does not apply to the municipality's ordinance adopted under section 5(d) of this chapter; or

(2) are not satisfied as applied to the proposed sale or disposition:

(A) section 5(g) through 5(k) of this chapter applies to the municipality's ordinance adopted under section 5(d) of this chapter; and

(B) the question as to whether the sale or disposition should be made must be submitted to the voters of the municipality at a special or general election if at least the number of the registered voters of the municipality set forth in section 5(h) of this chapter sign and present a petition to the legislative body opposing the sale or disposition, in accordance with section 5(g) through 5(k) of this chapter.

However, notwithstanding this subsection, in reviewing a proposed sale or disposition under subsection (e)(2), the commission may not condition its approval of the proposed sale or disposition on whether the factors set forth in IC 8-1-30.3-5(c) are satisfied or on any other factors except those provided for in subsection (e)(2) and (e)(3).

Indiana Code section 8-1.5-2-6.1 is not the sole statute that governs this transaction. Charlestown and Indiana-American also petitioned the IURC to approve the transaction under Indiana Code section 8-1-30.3-5 (2016), which governs the treatment of cost differentials involved in the sale or disposition of "distressed" water or wastewater utilities.[2] That statute provides, in relevant part:

> (a) This section applies if:
>
> (1) a utility company acquires property from another utility company at a cost differential in a transaction involving a willing buyer and a willing seller; and
>
> (2) at least one (1) utility company described in subdivision (1) is subject to the jurisdiction of the commission under this article.
>
> (b) There is a rebuttable presumption that a cost differential is reasonable.

---

[2] "Cost differential" is defined as the difference between:

> (1) the cost to a utility company that acquires utility property from a distressed utility, including the purchase price, incidental expenses, and other costs of acquisition; minus
>
> (2) the difference between:
>
> (A) the cost of the utility property when originally put into service by the distressed utility; minus
>
> (B) contributions or advances in aid of construction plus applicable accrued depreciation.

Ind. Code § 8-1-30.3-1 (2015).

(c) The utility company that acquires the utility property may petition the commission to include the cost differentials as part of its rate base. The commission shall approve the petition if the commission finds the following:

(1) The utility property is used and useful in providing water service, wastewater service, or both water and wastewater service.

(2) The distressed utility failed to furnish or maintain adequate, efficient, safe, and reasonable service and facilities.

(3) The utility company will make reasonable and prudent improvements to ensure that customers of the distressed utility will receive adequate, efficient, safe, and reasonable service.

(4) The acquisition of the utility property is the result of a mutual agreement made at arms length.

(5) The actual purchase price of the utility property is reasonable.

(6) The utility company and the distressed utility are not affiliated and share no ownership interests.

(7) The rates charged by the utility company before acquiring the utility property of the distressed utility will not increase unreasonably as a result of acquiring the utility property.

(8) The cost differential will be added to the utility company's rate base to be amortized as an addition to expense over a reasonable time with corresponding reductions in the rate base.

(d) A utility company may petition the commission in an independent proceeding to approve a petition under subsection (c) before the financial close of the transaction if the utility company provides:

(1) Notice of the proposed acquisition and any changes in rates or charges to customers of the distressed utility;

(2) Notice to customers of the utility company if the proposed acquisition will increase the utility company's rates by an amount that is greater than one percent (1%) of the utility company's base annual revenue;

(3) Notice to the office of the utility consumer counselor; and

(4) A plan for reasonable and prudent improvements to provide adequate, efficient, safe, and reasonable service to customers of the distressed utility.

(e) In a proceeding under subsection (d), the commission shall issue its final order not later than two hundred ten (210) days after the filing of the petitioner's case in chief. If the commission grants the petition, the commission's order shall authorize the acquiring utility company to make accounting entries recording the acquisition and that reflect:

(1) the full purchase price;

(2) incidental expenses; and

(3) other costs of acquisition;

> as the original cost of the utility plant in service assets being acquired, allocated in a reasonable manner among appropriate utility plant in service accounts.

Ind. Code § 8-1-30.3-5.

[21] The key issue is whether the purchase price for Charlestown's water utility was reasonable for purposes of Indiana Code sections 8-1.5-2-6.1(d) and 8-1-30.3-5(c)(5).[3] The IURC determined that the purchase price for Charlestown's utility was "equal to the appraisal performed by the statutorily appointed appraisers," and thus met the reasonableness requirement of Indiana Code section 8-1.5-2-6.1(d). NOW does not disagree that the purchase price was equal to the appraised value.[4]

[22] As for Indiana Code section 8-1-30.3-5(c)(5)'s requirement that the "actual purchase price" must be reasonable, the IURC concluded that the requirement had been met because the purchase price, which did not exceed the appraised value, was reasonable under Indiana Code section 8-1.5-2-6.1(d). NOW disagrees with this conclusion, arguing the two statutes "use different standards" to determine reasonableness and must be read separately. Appellant's Br. p. 21. NOW further claims that the IURC's decision results in

---

[3] On appeal, NOW does not challenge the transaction under any other subsection of Indiana Code section 8-1-30.3-5(c).

[4] As discussed above, the purchase price included the value of the utility's real property and other assets, but it excluded the value of the wells and well pumps that the city would continue to own and would lease to Indiana-American.

Indiana Code section 8-1-30.3-5(c)(5)'s reasonableness requirement being relegated to "mere surplusage." Reply Br. p. 10.

[23] Addressing this issue requires us to review principles of statutory application and construction. When a statute is unambiguous, it is unnecessary to engage in statutory construction in an effort to determine and give effect to legislative intent. *McCabe v. Comm'r, Ind. Dep't of Ins.*, 949 N.E.2d 816, 819 (Ind. 2011). Rather, we give an unambiguous statute its clear and plain meaning. *Id.*

[24] If statutory language is open to more than one reasonable interpretation, then the statute is ambiguous and must be considered according to the rules of statutory interpretation. *Matter of Supervised Estate of Kent*, 99 N.E.3d 634, 638 (Ind. 2018). We give undefined terms their plain and ordinary meaning. *Id.* "[P]aramount consideration must be given to the basic principle that two statutes that apply to the same subject matter must be construed harmoniously if possible." *McCabe*, 949 N.E.2d at 820. This rule takes precedence over other rules of statutory construction. *Id.*

[25] Indiana Code section 8-1-30.3-5(c)(5) requires the IURC to determine whether "[t]he actual purchase price of the utility property is reasonable." That statute does not define "actual" or "reasonable," and the sentence could be open to multiple interpretations. We thus apply rules of statutory construction.

[26] Indiana Code section 8-1.5-2-6.1 et seq. governs the transfer, acquisition, and improvement of municipal utilities, including the transfer of "nonsurplus" utility property. Indiana Code section 8-1-30.3-1 et seq. governs the treatment

of cost differentials for a subset of nonsurplus utility acquisitions, specifically the sale of "distressed" utilities. Indiana Code section 8-1.5-2-6.1 refers to Indiana Code section 8-1-30.3-5. Indeed, section 8-1-30.3-5 is necessarily dependent upon section 8-1.5-2-6.1, because there would be no purpose in seeking permission under section 8-1-30.3-5 for a cost differential to be included in a rate base unless the petitioner was engaged in the purchase of utility property under section 8-1.5-2-6.1. We conclude the two statutes apply to the same subject matter and must be construed harmoniously. *See Hancock Cty. Rural Elec. Membership Corp. v. City of Greenfield*, 768 N.E.2d 909, 912 (Ind. Ct. App. 2002) (construing together several statutes governing annexation ordinances).

[27] Reading the two statutes together, we note that when the IURC reviews the sale of nonsurplus utility property, Indiana Code section 8-1.5-2-6.1(h) requires the IURC to consider the factors set forth in Indiana Code section 8-1-30.3-5(c), even if the purchaser of the property does not file a petition under Indiana Code section 8-1-30.3-5(c)(5). The IURC is thus obligated to consider the reasonableness of the sale price under Indiana Code section 8-1.5-2-6.1(d) under all circumstances. The reasonableness requirement of Indiana Code section 8-1-30.3-5(c)(5) must be subordinate and complementary to the reasonableness requirement of Indiana Code section 8-1.5-2-6.1(d).

[28] We conclude the sale process set forth in Indiana Code section 8-1.5-2-6.1 governs sales of nonsurplus property by both distressed and nondistressed utilities. In the case of sales involving nondistressed utilities, any price that

does not exceed the appraised value is deemed reasonable per subsection (d) of that statute. In the case of a sale by a distressed utility, a sale price that does not exceed the appraised value is similarly deemed reasonable under Indiana Code section 8-1.5-2-6.1(d), but Indiana Code section 8-1-30.3-5(c)(5) further allows the IURC to approve a sale price *in excess* of the appraised value if the IURC finds the "actual price" to be reasonable under the circumstances based on sufficient evidence. In other words, in general the appraised value of nonsurplus utility property is the reasonable price limit under Indiana Code section 8-1.5-2-6.1, except in cases where a distressed utility is for sale, where a higher price may be reasonable. This reading harmonizes the two statutes and gives meaning to section 8-1-30.3-5(c)(5).

[29] Our reading of these statutes is supported by a related statute, Indiana Code section 8-1.5-2-6 (2016). Subsection (b) of that statute provides: "[e]xcept as provided in subsection (e), [nonsurplus utility] property may not be sold for less than its full appraised value, as set forth in the appraisal, less the amount of any bonds, liens, or other indebtedness due upon the property . . . ." In turn, Indiana Code section 8-1.5-2-6(e) states:

> (e) The municipally owned utility property that is [sold as nonsurplus property] may be sold for less than its full appraised value, as set forth in the appraisal, if the municipal legislative body determines that it would be in the municipality's best interests to sell the property for less than its full appraised value so as to result in lower utility rates to be charged by the prospective purchaser to customers of the municipality's municipally owned utility.

[30]     Indiana Code section 8-1.5-2-6 thus grants municipalities the authority to sell utility property for less than the appraised value under certain circumstances, which strengthens our conclusion that when the sale price is greater than the appraised value, the IURC must consider the reasonableness of the "actual price" under Indiana Code section 8-1-30.3-5(c)(5).

[31]     For these reasons, we agree with the IURC that the sale price of Charlestown's utility, which was equal to the appraised value, was reasonable for purposes of Indiana Code sections 8-1.5-2-6.1(d) and 8-1-30.3-5(c)(5). As a result, Charlestown and Indiana American's transaction fulfilled the requirements of Indiana Code section 8-1-30.3-5(c), and the transaction did not need to be submitted to a public vote under Indiana Code section 8-1.5-2-6.1(h).[5]

## III. Providing Appraisal Information to Public

[32]     NOW next claims the City failed to comply with statutory requirements governing disclosures during the appraisal process.[6] The parties' dispute focuses on Indiana Code section 8-1.5-2-4 (2016), which provides:

---

[5] On a related note, NOW argues in detail that the appraisal was flawed, pointing to testimony by OUCC witnesses identifying perceived errors in the appraisal calculations. The IURC concluded there was no basis to challenge the appraisals because: (1) the appraisers met statutory requirements for qualifications; and (2) the appraisals were deemed reasonable by law, pursuant to Indiana Code sections 8-1.5-2-6.1(d) and 8-1-30.3-5(c)(5). Appellant's App. Vol. 2, p. 32. We agree with the IURC's reading of those statutes and decline to address NOW's evidentiary challenges to the appraisal's calculations.

[6] Charlestown argues NOW waived this claim for appellate review because NOW first presented it to the IURC in NOW's motion for summary judgment after the expiration of the deadline for written evidentiary submissions. "Appellate review presupposes that a litigant's arguments have been raised and considered" in the prior proceeding. *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013). In this case, NOW

Whenever the municipal legislative body or the municipal executive determines to sell or otherwise dispose of nonsurplus municipally owned utility property, it shall provide for the following in a written document that shall be made available for inspection and copying at the offices of the municipality's municipally owned utility in accordance with IC 5-14-3.

(1) The appointment, as follows, of three (3) residents of Indiana to serve as appraisers:

(A) One (1) disinterested person who is an engineer licensed under IC 25-31-1.

(B) One (1) disinterested appraiser licensed under IC 25-34.1.

(C) One disinterested person who is either:

(i) an engineer licensed under IC 25-31-1; or

(ii) an appraiser licensed under IC 25-34.1.

(2) The appraisal of the property.

(3) The time that the appraisal is due.

[33]     The IURC determined that Charlestown did not fully meet the requirements of the statute because the city failed to put the required information in a single

presented its claim to the IURC, and the IURC addressed the claim in its final order. We reject Charlestown's claim of waiver.

document. Notwithstanding, the IURC declined to reject the utility sale, concluding Charlestown substantially complied with the statute by having the information available in multiple documents.

[34] The Indiana Supreme Court has recognized that "immaterial variances from prescribed procedures [may] have no legal fallout." *D & M Healthcare, Inc. v. Kernan*, 800 N.E.2d 898, 903 (Ind. 2003). Substantial compliance with a statutory mandate is sufficient if the act of compliance accomplishes the essential purpose of the statute. *Lewis v. Bd. of Sch. Trs. of Charles A. Beard Mem'l Sch. Corp.*, 657 N.E.2d 180, 183 (Ind. Ct. App. 1995), *trans. denied*.

[35] The plain language of Indiana Code section 8-1.5-2-4 provides that the required information shall be set forth in "a written document." There is no dispute that the City did not compile such a document, thus failing to comply with the statute in its entirety. Instead, the City possessed multiple documents related to appointing appraisers, as well as the appraisal itself, which collectively stated the identity of the appraisers and specified the property to be appraised. According to the City's discovery responses, those documents were available upon request at the "municipal utility office." Appellant's App. Vol. 6, p. 61.

[36] NOW further argues that none of the documents identified by the city stated the "time the appraisal is due," in violation of Indiana Code section 8-1.5-2-4. Based on our review of the documents, we agree. None of the appraisers' contracts, or the appraisals themselves, explained when the appraisals were due to be submitted to the city. Nevertheless, despite Charlestown's failure to

compile one document and to state when the appraisal was due, we agree with the IURC that the City substantially complied with statutory requirements. It appears the essential purpose of Indiana Code section 8-1.5-2-4 is to allow citizens to learn who is appraising municipal utility property and have access to the appraisal itself. Charlestown, by making available the documents containing this information, accomplished that essential purpose. We decline to reverse the IURC's decision on this basis. *See Gee v. Green Tree Servicing, LLC*, 934 N.E.2d 1260, 1262 (Ind. Ct. App. 2010) (sheriff substantially complied with statute requiring posting of tax sale notice at door of county courthouse).

[37] NOW presents a related argument, claiming that Charlestown failed to make the documents available to the public. In support of its claim, NOW cites evidence from a citizen who submitted public records requests for documents related to the appraisal process, only to have the requests denied by Charlestown's attorney. This case is not the forum to determine whether the city complied with the public records request statutes, which have separate remedies for noncompliance. Further, Charlestown presented testimony that the documents were available for public review. As a result, NOW's argument amounts to a request to reweigh the evidence, which does not comply with our standard of review.

## IV. Timeliness of Public Hearing

[38] For its final allegation of error, NOW claims the IURC should have rejected the utility transaction because Charlestown failed to comply with the statutory

deadlines for holding a public hearing to discuss the proposed sale.[7] Indiana Code section 8-1.5-2-5 (2016) sets forth the timeline for a public hearing, in relevant part:

> (d) If, after the return of the appraisal by the appraisers, the legislative body and the municipal executive decide to proceed with the sale or disposition of the nonsurplus municipally owned utility property, the legislative body shall, not earlier than the thirty (30) day period described in subsection (e) and not later than ninety (90) days after the return of the appraisal, hold a public hearing to do the following:
>
> (1) Review and explain the appraisal.
>
> (2) Receive public comment on the proposed sale or disposition of the nonsurplus municipally owned utility property.
>
> Not less than thirty (30) days or more than sixty (60) days after the date of a hearing under this section, the legislative body may adopt an ordinance providing for the sale or disposition of the nonsurplus municipally owned utility property, subject to subsections (f) and (g) and, in the case of an ordinance adopted under this subsection after March 28, 2016, subject to section 6.1 of this chapter. The legislative body is not required to adopt an ordinance providing for the sale or disposition of the nonsurplus municipally owned utility property if, after the hearing, the legislative body determines it is not in the interest of the municipality to proceed with the sale or disposition. Notice of a

---

[7] Charlestown argues that NOW waived this claim for failure to timely present it to the IURC. We decline to apply the doctrine of waiver here for the same reasons stated in footnote 6 above.

hearing under this section shall be published in the manner prescribed by IC 5-3-1.

(e) The hearing on the proposed sale or disposition of the nonsurplus municipally owned utility property may not be held less than thirty (30) days after notice of the hearing is given as required by subsection (d).

[39] In this case, the parties do not dispute that the appraisal was delivered to Charlestown in November 2016, and that Charlestown failed to hold a public hearing within ninety days of delivery. In addition, there appears to be no dispute that the appraisers delivered a "recertified" appraisal to the city on April 1, 2017, and that Charlestown held a public hearing not earlier than thirty days and no later than ninety days after delivery of the "recertified" appraisal. The question is whether the recertification was barred by Indiana Code section 8-1.5-2-5.

[40] The IURC determined recertification of the appraisal was not expressly forbidden by the statute, and Charlestown complied with the statute because the recertification process did not harm "the public's opportunity to comment and be heard by the City Council." Appellant's App. Vol. 2, p. 42. We agree. The plain language of Indiana Code section 8-1.5-2-5 does not bar recertification or redelivery of an appraisal. Nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the statute itself. *Ind. Dep't of State Revenue v. Horizon Bancorp*, 644 N.E.2d 870, 872 (Ind. 1994). The statute sets forth a timetable for a public hearing once an appraisal

is delivered, and Charlestown complied with that timetable as to the recertified appraisal.

[41] NOW argues Charlestown's citizens were harmed by the recertification because the appraisal was "stale" by six months when Charlestown held its public hearing. Reply Br. p. 22. We have already determined the IURC properly ruled that the calculations in the appraisal are not to be second-guessed, because the purchase price was reasonable by statute. Thus, alleged staleness does not change the result. We find no reversible error.

# Conclusion

[42] For the reasons stated above, we affirm the judgment of the Indiana Utility Regulatory Commission.

[43] Affirmed.

Bradford, J., and Altice, J., concur.