THE OFFICE OF UTILITY CONSUMER COUNSELOR, Appellant,

v.

BOARD OF DIRECTORS FOR UTILITIES OF THE DEPARTMENT OF PUBLIC UTILITIES OF THE CITY OF INDIANAPOLIS, Appellee.

No. 93A02–9601–EX–27.

Court of Appeals of Indiana.

April 16, 1997.

Anne E. Becker, Christopher C. Earle, Office of Utility Consumer Counselor, Indianapolis, for Appellant.

Michael B. Cracraft, Thomas A. Dickey, Hackman McClarnon Hulett & Cracraft, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, the Office of Utility Consumer Counselor (Public Counselor) appeals the Indiana Utility Regulatory Commission (Commission)'s December 28, 1995 order (cause no. 40168 and 40169) approving a gas transportation agreement between Citizens Gas & Coke Utility (Citizens) and Indianapolis Power and Light Company (IPL).

We affirm.

The issue before this court upon review is whether the Commission erred by approving the agreement between Citizens and IPL without requiring that the contract provide for the allocation of Federal Energy Regulatory Commission (FERC) Order no. 636 (order 636) transition costs as per the volumetric allocation method previously approved by the Commission in its previous orders—cause no. 39723 (NIPSCO order) and cause no. 37399–GCA41 (GCA41 order).

The facts revolve around the promulgation of FERC regulations started in 1992 under order 636. In short, order 636 involved a dramatic restructuring within the natural gas industry. Before the order, interstate pipelines functioned as both merchants and transporters; however, order 636 required the pipelines to "unbundle" their services. The FERC recognized that there would be certain costs inherent in these changes and identified these "transition costs". The FERC authorized the pipelines to recover these costs from their customers, such as Citizens.

The interstate pipelines did indeed pass along the transition costs to their customers and those customers, in turn, petitioned the Commission to recover those costs from their customers. In 1993, Northern Indiana Public Service Company (NIPSCO) petitioned the Commission for recovery of transition costs. NIPSCO proposed that it collect these costs through volumetric throughput allocation, that is, each customer would pay a uniform charge based upon the transition costs incurred by NIPSCO divided by its throughput volume. NIPSCO further proposed that a certain type of transition costs, Account No. 191 balance costs, be only assessed to the utility's sales customers and not the transportation customers. The Commission approved NIPSCO's proposal. It also decided that the Account 191 costs should be only assessed to the utility's sales customers because the beneficiaries of the contracts giving rise to those costs had only been the utility's sales customers.

Also, in 1993, Citizens filed a petition with the Commission in order to recover transition costs from its customers. The Commission reaffirmed its ruling in the NIPSCO case that such costs were recoverable. Citizens had proposed an as-billed allocation method in order to more properly allocate transition costs to the customers on whose behalf it incurred those costs. The Commission, however, agreed with the Public Counselor that a volumetric allocation among all the utility's customer classes (including the interruptible transportation class) was appropriate.

In March of 1995, Citizens filed a petition with the Commission seeking approval of Gas Rate 30 (Rate 30) for retail power generation service and approval of a gas transportation

agreement between IPL and Citizens under that Rate 30. Citizens created a new class of customers under the Rate 30, which is designed to attract and retain gas load involved with the production of electricity and steam. Rate 30 customers are eligible for individually negotiated contract rates if they meet the applicability provisions. Those provisions are that the customer:

1) Be a retail power generation customer,

2) Agree to provide a verified written statement that service under the rate is required to enable Citizens to enhance or attract its load, and

3) Agree to contract for service for a period of no less than five years, and

4) Agree to separate metering of service taken under the negotiated rate.

Record at 288–89. Rate 30 also requires that contracts under the rate be approved by the Commission. Additionally in its decision below, the Commission found that there should be language added to Rate 30 requiring that the customer have alternate energy capability.

■ The Public Counselor's concern is that the agreement between IPL and Citizens does not provide for the allocation of transition costs. These costs are being paid by all of Citizens' other customers and the Public Counselor asserts that not requiring IPL to pay such costs is discrimination in violation of I.C. 8–1.5–3–8(b) which requires that utility rates be "nondiscriminatory, reasonable, and just." I.C. 8–1.5–3–8(b) (Burns Code Ed.1991). Furthermore, the Public Counselor contends that the NIPSCO order and the GCA41 order require that Citizens allocate transition costs to IPL on a volumetric basis to all of its customers, including IPL and Rate 30 customers.

■ The Public Counselor's latter contention is clearly erroneous. As both of the parties agree, administrative agencies must follow some sort of ascertainable standards. Therefore, an agency is required to either follow the precedents it has set, or change its rules and policies with appropriate explanation. *Community Care Ctrs. v. Department of Pub. Welfare* (1988) Ind.App., 523 N.E.2d 448, 450–51. In this case, the Commission

recognized the apparent conflict with the earlier decisions. Resolving the dilemma, the Commission noted:

> In [NIPSCO and GCA41] we required the volumetric allocation of transition costs ... among all then existing customer classes. In this current case we not only have a new customer but one being served under a new rate class which was not in existence at the time transition costs were assessed. Record at 292.

The Commission distinguished IPL and other future customers under Rate 30 from those customers to whom the previous order referred. As such, the present order is not in conflict with the previous orders.

■ The essence of the Public Counselor's complaint is that Citizens and the Commission has arbitrarily distinguished a group of customers and declared that they need not pay transition costs. What the Public Counselor, in reality, is concerned with is whether there is a justification for failing to charge IPL with the costs under the Rate 30 plan, or if this is simply undue discrimination.

■ The Public Counselor points to I.C. 8–1.5–3–8 (Burns Code Ed. Repl.1991) which requires that the rates charged by municipal utilities be nondiscriminatory. However, we find that a bright-line adherence to such language would render many utility rates invalid and compel our utility rate-making scheme unworkable. In *Capital Improvement Bd. of Managers of Marion County, et al. v. Public Serv. Comm'n* (1978) 176 Ind. App. 240, 375 N.E.2d 616, this court addressed the language of I.C. 8–1–2–68 which refers to unjust discrimination. This court said that the statute "does not prohibit differing rates for differing types of service, but rather proscribes unreasonable differences or unjust discrimination. It is only *unreasonable* differences in rates between customers or classes of customers that violate this statute." *Id.* 375 N.E.2d at 633. Furthermore, in its reply brief, the Public Counselor concedes that Citizens may charge different rates for different services. Clearly, the Commission may choose to charge transition costs to one group yet not to another if that choice is based upon reasonable differences

in the class of customer or the type of service.

Unlike ordinary customers of Citizens, IPL (and all other customers who would fit under the Rate 30 designation) has available to it alternate energy capability. To be sure, such availability was a requisite for eligibility under Rate 30. In fact, IPL's facility in question here had the ability to burn fuel oil or bypass Citizens completely and connect directly to one of the interstate pipelines.

In the past, the Commission has recognized the unique nature of such customers. *Re Indiana Gas Co., Inc.* (May 8, 1991) IURC Cause nos. 39117 and 39118, 122 PUR4th 365, 1991 WL 501832. In *Indiana Gas,* the Commission approved Gas Rate 70, which had requirements similar to those before us. The Commission noted that "the attraction of additional load to a utility's system may be appropriate because it produces benefits for all of the utility's customers." *Id.,* 122 PUR4th at 374. Thus, the Commission has previously determined that when rates are implemented to attract or retain load, the Commission must consider:

1) Whether the proposed rate recovers the incremental cost of serving the customer whose load it seeks to attract or retain, and

2) Whether the proposed rate recovers some contribution to the utility's fixed costs associated with the provision of utility service. Record at 287 (citing *Indiana Gas* ).

In the present case, the Commission approved the contract with an eye toward the public interest. The Commission concluded that the IPL–Citizens contract would not have been satisfactory to IPL had transition costs been imposed. The Public Counselor maintains that this is not the case and that the parties never discussed transition costs in the negotiations. Although the latter contention may be true, the evidence reveals that the current terms of the contract were necessary in order to strike the deal between the

parties. The Commission was entitled to conclude that the imposition of transition costs, which would have increased the contract price by $106,000, would have precluded an agreement, thus their exclusion was necessary to the agreement. If the parties had not come to the agreement in question, IPL had the capacity to, and presumably would, obtain its energy through alternate channels.

The Public Counselor does not contest that the IPL–Citizens agreement does not fulfill the aforementioned criterion which requires Citizens to recoup its incremental costs of providing service and a contribution toward its fixed costs. Without IPL as a customer, the portion of those fixed costs for which IPL would have paid would have to be paid by other customers.[1] Therefore, the Commission properly concluded that the IPL–Citizens agreement is beneficial to the general public.

The decision of the Commission is hereby affirmed.

KIRSCH and DARDEN, JJ., concur.

---

1. In fact, transition costs may indeed be part of the fixed costs to which IPL's contract price is contributing. Because of the fact that inclusion of transition costs into the contract price as a volumetric allocation would foreclose the possibility of a contract, the Commission properly concluded that Citizens was in a better position to recover at least some of its fixed costs through a contract without transition costs than none at all.