ATTORNEYS FOR APPELLANT
Gregory S. Colton
Merrillville, Indiana

Jon Laramore
Peter L. Hatton
Elizabeth A. Herriman
Robert L. Hartley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
John Wickes
Todd Richardson
Joseph Rompala
Bette Dodd
Steven Griesemer
Karl Mulvaney
Nana Quay-Smith
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General of Indiana

Beth Krogel Roads
Indiana Utility Regulatory Commission Counsel
Indianapolis, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 93S02-0809-EX-00489

NORTHERN INDIANA PUBLIC SERVICE
COMPANY,

*Appellant (Respondent below),*

v.

UNITED STATES STEEL CORPORATION

*Appellee (Complainant below).*

Appeal from the Indiana Utility Regulatory Commission
Cause No. 43204

On Petition to Transfer from the Indiana Court of Appeals, No. 93A02-0706-EX-00467

**June 23, 2009**

**SHEPARD, Chief Justice.**

Northern Indiana Public Service Company and its customer U.S. Steel settled a rate and service dispute in 1999. In this case, U.S. Steel asked the Indiana Utility Regulatory Commission to interpret the order it issued in 1999 approving a settlement between the parties. We affirm the Commission.

**Facts and Procedural History**

Northern Indiana Public Service Company is a public utility that provides electricity to a steel production facility in Gary, known as the "Gary Works," operated by United States Steel Corporation, a large industrial manufacturer of steel products.

In 1999, NIPSCO and U.S. Steel settled a longstanding electric power dispute involving U.S. Steel's electric generation and transmission facilities in Illinois. They agreed to the preliminary terms of the settlement in a Term Sheet in May 1999. A few weeks later, in June 1999, the parties executed six other documents: a Letter Agreement, a Settlement Agreement, a Contract for Electric Industrial Power Service ("Contract"), an Operation and Control Agreement/Operation Agreement, a Facility/Property Lease, and an Access/Use License Agreement. They submitted the Settlement and Contract to the Indiana Utility Regulatory Commission, which approved it by an order dated July 8, 1999 after notice and an evidentiary hearing. Six years later, when a price adjustment provision in the Contract became effective, the parties disagreed on its application. NIPSCO maintained the price adjustment applied both to the Energy Charge (a fixed number of hours of use each month given by the agreement) and the Demand Charge (for energy use beyond the number of hours given for the Energy Charge's fixed number). U.S. Steel insisted it applied only to the Energy Charge.

2

On November 17, 2006, U.S. Steel filed a complaint seeking to enforce its interpretation of the Contract. U.S. Steel then filed its motion for summary judgment. After briefing and oral argument, the Commission granted U.S. Steel's motion for summary judgment, an unusual procedure for the Commission, on May 9, 2007, pursuant to 170 Ind. Admin. Code 1-1.1-26(a) (2007). NIPSCO appealed to the Court of Appeals, which reversed. N. Ind. Pub. Serv. Co. v. U.S. Steel Corp., 881 N.E.2d 1065 (Ind. Ct. App. 2008). We granted transfer, 898 N.E.2d 1223 (Ind. 2008)(table).

## I.    Standard of Judicial Review

The General Assembly created the Indiana Utility Regulatory Commission primarily as a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature. United Rural Elec. Membership Corp. v. Ind. & Mich. Elec. Co., 549 N.E.2d 1019 (Ind. 1990); See Ind. Code § 8-1-1-5 (2008). The Commission's assignment is to insure that public utilities provide constant, reliable, and efficient service to the citizens of Indiana. Ind. Bell Tel. Co. v. Ind. Util. Regulatory Comm'n, 715 N.E.2d 351, 354 n.3 (Ind. 1999). The Commission can exercise only power conferred upon it by statute. United Rural Elec. Membership Corp., 549 N.E.2d at 1021.

The Indiana Code authorizes judicial review of Commission orders as follows:

> Any person, firm, association, corporation, limited liability company, city, town, or public utility adversely affected by any final decision, ruling, or order of the commission may, within thirty (30) days from the date of entry of such decision, ruling, or order, appeal to the court of appeals of Indiana for errors of law under the same terms and conditions as govern appeals in ordinary civil actions, except as otherwise provided in this chapter and with the right in the losing party or parties in the court of appeals to apply to the supreme court for a petition to transfer the cause to said supreme court as in other cases. An assignment of errors that the decision, ruling, or order of the commission is contrary to law

shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered.

Ind. Code § 8-1-3-1 (2008).

This section includes language almost identical to provisions for judicial review of other administrative agency actions.[1] See McClain v. Review Bd. of Ind. Dept. of Workforce Dev., 693 N.E.2d 1314, 1317 n.1 (Ind. 1998).

This amounts to a multiple tiered review. On the first level, it requires a review of whether there is substantial evidence in light of the whole record to support the Commission's findings of basic fact. Citizens Action Coalition of Ind., Inc. v. N. Ind. Pub. Serv. Co., 485 N.E.2d 610, 612 (Ind. 1985).[2] Such determinations of basic fact are reviewed under a substantial evidence standard, meaning the order will stand unless no substantial evidence supports it. McClain, 693 N.E.2d at 1317-18. In substantial evidence review, "the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings." Id. The Commission's order is conclusive and binding

---

[1] The language referred to is "An assignment of errors that the decision, ruling, or order of the commission is contrary to law shall be sufficient to present both the sufficiency of the facts found to sustain the decision, ruling, or order, and the sufficiency of the evidence to sustain the finding of facts upon which it was rendered." Ind. Code §§ 3-8-8-6 (Election Commission), 22-3-4-8(d) & 22-3-7-27(f) (Workers' Compensation Board), 22-4-17-12 (Unemployment Insurance Review Board), 23-2-3.1-11 (Securities Commissioner) (2008). The Indiana Administrative Orders and Procedures Act, which does not apply to the IURC, lays out a similar standard of review: "The court shall grant relief . . . only if it determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Ind. Code § 4-21.5-5-14(d) (2008).

[2] The decision in Citizens Action Coalition, 485 N.E.2d at 612-13, addressed these levels following the order of the statute, but we begin today with review of findings of fact and proceed to review of ultimate conclusions, as we did in McClain, 693 N.E.2d at 1317.

4

unless (1) the evidence on which the Commission based its findings was devoid of probative value; (2) the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding does not rest upon a rational basis; (3) the result of the hearing before the Commission was substantially influenced by improper considerations; (4) there was not substantial evidence supporting the findings of the Commission; (5) the order of the Commission is fraudulent, unreasonable, or arbitrary. Id. at 1317 n.2. This list of exceptions is not exclusive. Id.

At the second level, the order must contain specific findings on all the factual determinations material to its ultimate conclusions. Citizens Action Coalition, 485 N.E.2d at 612. McClain described the judicial task on this score as reviewing conclusions of ultimate facts for reasonableness, the deference of which is based on the amount of expertise exercised by the agency. McClain, 693 N.E.2d at 1317-18. Insofar as the order involves a subject within the Commission's special competence, courts should give it greater deference. Id. at 1318. If the subject is outside the Commission's expertise, courts give it less deference. Id. In either case courts may examine the logic of inferences drawn and any rule of law that may drive the result. Id. Additionally, an agency action is always subject to review as contrary to law, but this constitutionally preserved review is limited to whether the Commission stayed within its jurisdiction and conformed to the statutory standards and legal principles involved in producing its decision, ruling, or order. Citizens Action Coalition, 485 N.E.2d at 612-13.

NIPSCO advocates that we apply a *de novo* standard because the case involves summary judgment and a question of law. (Appellant's Br. at 7-8.) It cites two recent Court of Appeals opinions reviewing decisions of the Commission *de novo*: Ind. Bell Tel. Co. v. Time Warner Commc'ns of Ind., L.P., 786 N.E.2d 301 (Ind. Ct. App. 2003), and Cowper v. Collier, 720 N.E.2d 1250 (Ind. Ct. App. 1999), *trans. denied,* 735 N.E.2d 230 (Ind. 2000). (Opposition to Transfer at 6-7.)

Indiana Bell involved a challenge of the Commission's interpretation of an interconnection agreement between competing carriers. 786 N.E.2d at 303-04. In affirming the Commission's decision, the opinion did not treat the Commission's order granting summary judgment any differently than it would a trial court's decision, nor did it consider doing so, though it noted that it was not a typical contract in light of the Commission's regulatory role in determining whether to approve the contract at issue in the case. Id. at 305. Instead, the Court of Appeals applied the *de novo* standard as if a trial court had interpreted the contract and gave Ameritech, the party advocating for that low level of deference, "the benefit of the doubt" because AT&T failed to cite authority for its alternative standard. Id.

The decision in Cowper v. Collier arose from a trial court review of a Natural Resource Commission's order upholding its administrative law judge's decision after a trial on the merits. Cowper, 720 N.E.2d at 1254. The opinion in Cowper reviewed the NRC's decision *de novo* because "the law is the province of the judiciary and the reviewing court is not bound by any agency's conclusions of law," and "the construction of an unambiguous written contract is generally a question of law for the court." Id. at 1255. Applying contract case law, the opinion reversed in part and remanded the NRC order. Id. at 1256.

NIPSCO argues that the current appeal is not the product of a regulatory settlement but rather a dispute between two private parties over interpreting the Contract. (Reply Br. at 11.) Because a court's role in interpreting a contract is "to give effect to the parties' intent at the time the contract was made and as reflected by the language they used," NIPSCO says that interpreting the Contract is a question of law appropriate for *de novo* review by the judiciary. (Opposition to Rehearing at 3.) NIPSCO asserts that in the proceeding the Commission "made no use of ratemaking principles or agency expertise," and therefore deserves no deference on the question of contract interpretation. (Opposition to Transfer at 6.)

This paints too simple a picture of the processes under which the Contract became a Commission order. Regulatory settlements bear important differences from agreements

governed purely by the law of contracts. Such an agreement does not become effective until and unless the Commission acts on the agreement. Ind. Code § 8-1-2-24 (2008). A contract between private parties takes on public interest ramifications once the Commission approves it. U.S. Gypsum, Inc. v. Ind. Gas Co., 735 N.E.2d 790, 803 (Ind. 2000), *quoting* Citizens Action Coalition of Ind., Inc. v. PSI Energy, Inc., 664 N.E.2d 401, 406 (Ind. Ct. App. 1996). The Commission maintains the authority and statutory responsibility to supervise and regulate the Contract. In responding to U.S. Steel's request that it interpret and enforce its 1999 order, the Commission received affidavits and reviewed the Contract, bills, its own order, the rate structure, and other documents. (Pet. to Transfer at 5; App. at 4-8.) Both NIPSCO and U.S. Steel asserted that there were no disputes over the material facts, making the matter appropriate for summary resolution. As it commonly does in hearing the disputes before it, the Commission did more than find facts; it deployed its expertise in the subject matter, one source of judicial deference to the Commission's decision-making. See U.S. Gypsum, 735 N.E.2d at 795.

Here, the Commission approved the contract when the parties entered it, effectively making it an order of the Commission. This means the Commission interpreted its own order, not a contract entered by the parties and later disputed. As the Seventh Circuit once said in reviewing an order of the Environmental Protection Agency,

> [W]hen the document is an order, the court or agency that issued it is, sensibly enough, considered to have special insight into its meaning, so review is deferential . . . . And the order itself is full of technical terms, and we think the EPA is entitled to some scope in interpreting their meaning as well. It is, to repeat, its own order.

Employers Ins. of Wasau v. Browner, 52 F.3d 656, 666 (7th Cir. 1995), *cert. denied*, 516 U.S. 1042 (1996).

7

NIPSCO acknowledges, as it must, that the initial approval of the Contract required the Commission to exercise its expertise under Ind. Code § 8-1-2-24. (Reply Br. at 10.) As U.S. Steel points out, this puts NIPSCO in the difficult position of arguing that in the present enforcement proceeding, "the Commission misinterpreted its own prior order."[3] (Appellee's Br. at 16.) Approving such contracts and resolving disputes revolving around them is intrinsic to the Commission's regulation of utility rates.

Appellate courts apply a *de novo* standard when reviewing a trial court's summary judgment order because the reviewing court faces the same issues that were before the trial court and analyzes them the same way. Carie v. PSI Energy, Inc., 715 N.E.2d 853 (Ind. 1999). By contrast, review of an agency order does not involve the same analysis on appeal. As Justice Arterburn wrote, "ratemaking is a legislative, not a judicial function . . . ." Pub. Serv. Comm'n v. City of Indianapolis, 235 Ind. 70, 81, 131 N.E.2d 308, 312 (1956). Agencies are not judicial bodies. They are executive branch institutions which the General Assembly has empowered with delegated duties. As such, an adjudication by an agency deserves a higher level of deference than a summary judgment order by a trial court falling squarely within the judicial branch. We therefore apply the established standard of review for judicial review of Commission orders.

As our opinion in McClain summarized the statutory standard of review, "basic facts are reviewed for substantial evidence, legal propositions are reviewed for their correctness." McClain, 693 N.E.2d at 1318. Ultimate facts or "mixed questions" are evaluated for reasonableness, with the amount of deference depending on whether the issue falls within the Commission's expertise. See id.

---

[3] Not only was the Commission the same institution that reviewed the parties' settlement and entered the order, the Presiding Commissioner who took the laboring oar to the Contract in the first place also led the proceedings in the dispute now before us. (Appellee's Br. at 16, *citing* App. at 10, 49.)

In this case, interpreting the Commission's order is a question falling well within the Commission's expertise. NIPSCO acknowledges the 1999 order itself involved the Commission's special competence, and interpreting the meaning of the order is not substantively different than approving the Contract. We therefore consider this question as a mixed question of law and fact with a high level of deference, examining the logic of the inferences made and the correctness of legal propositions without replacing our own judgment for that of the Commission.

## II. The Commission did not err in interpreting the Contract

Article 5 of the Contract outlines the rates NIPSCO is to charge U.S. Steel. Article 5.1 provides that "This Contract is a requirements contract for firm service with no minimums or take-or-pay conditions. . . . [E]ffective October 1, 2005 through the end of the Contract term; a market based price adjustment factor will be used to adjust the kilowatt-hour prices set forth in Article 5.2 . . . ." (App. at 32.) Article 5.2 sets forth the bifurcated rate structure including a Demand Charge and an Energy Charge. (App. at 33.) The Demand Charge language refers to "all kilowatts of billing demand," while the Energy Charge language refers to "kilowatt-hour[s]." (App. at 33.) The Commission found that the language of the Contract unambiguously supported U.S. Steel's interpretation that the Adjustment applied only to the Energy Charge, that the definitive Contract superseded any earlier expressions of intent, and that the Term Sheet did not make the Contract ambiguous or demonstrate a contrary intent. (App. at 13-17.) In reaching these conclusions, the Commission applied utility and contract law consistent with established principles.

Both parties contend that the Contract was not ambiguous, and the Commission agreed. (App. at 13.) The Commission observed that an unambiguous contract is not subject to construction and that parol or extrinsic evidence may not be used to expand, vary, or explain its

terms. (App. at 13, citing <u>United Consulting Engineers v. Bd. of Comm'rs of Hancock County</u>, 810 N.E.2d 351, 354 (Ind. Ct. App. 2004).)

NIPSCO argues that the Term Sheet, Letter Agreement, and Settlement Agreement should be considered to ascertain the intent of the parties and that the Contract contemplates the agreement consists of all seven documents. (Appellant's Br. at 11-17.) The Commission notes that the parties submitted only the Settlement and Contract for its approval in 1999, and any agreement for a special rate must be submitted and approved by the Commission. (App. at 14-15.) Inasmuch as "neither the Term Sheet nor the Letter Agreement was filed with the Commission as part of the parties' agreement," the Commission concluded that they could not be part of the approved agreement. (App. at 14.)

Furthermore, the Commission looked to the Contract's language and contract law to find "that the Contract is the fully integrated agreement of the parties for the purchase of electricity and that neither the Term Sheet nor Letter Agreement was incorporated therein." (App. at 14). The Commission concluded:

> If an agreement is fully integrated, then evidence of prior or contemporaneous written or oral statements and negotiations cannot operate to either add to or contradict the written agreement. <u>Franklin v. White</u>, 493 N.E.2d 161, 166-67 (Ind. 1986). Based on the undisputed evidence and the language of the documents, we find as a matter of law that the Term Sheet and Letter Agreement were not incorporated into the Contract and therefore can not be used to alter or amend the unambiguous Contract terms as to the application of the Adjustment.

(App. at 16.)

The Commission also considered NIPSCO's contention that the Term Sheet should be available as evidence to illuminate the meaning of the settlement approved by the Commission in 1999. Only the Term Sheet and the Contract contain pricing terms. (App. at 32-35, 121.) The Term Sheet provides for a uniform rate while the Contract contains the bifurcated Energy Charge

and Demand Charge rates, though both documents had the market-based pricing adjustment. (App. at 33, 121.) NIPSCO argues that the Term Sheet thus shows that the parties intended the market adjustment to apply to all aspects of the Contract's pricing. (Appellant's Br. at 19.) The Commission disagreed, instead interpreting the Term Sheet as setting out the preliminary terms of the future agreement, which changed from the Term Sheet to the Contract. (App. at 16-17.) It concluded that the change from a uniform rate in the Term Sheet to the two-part rate in the Contract was a part of several changes with the overall effect of shifting more demand risk to U.S. Steel. (App. at 17.)

NIPSCO argued that the Adjustment applies to the Demand Charge because Article 5.1 applies to "kilowatt-hour prices" and the Demand Charge is for kilowatts up to a specified number of hours. The Commission rejected this interpretation, reasoning:

> The only kilowatt hour prices set forth in Article 5.2 are those that apply to the kilowatt hours that are subject to the energy charge. The fact that the demand charge includes up to a certain amount of kilowatt hours of use does not alter the fact that the demand charge is a price for kilowatt demand. Therefore, we find that NIPSCO's attempt to apply the Adjustment to kilowatt hours not included in the energy charge is a misapplication of the agreed upon Contract terms and of the rates approved by the Commission on July 8, 1999.

(App. at 14.)

On appeal, NIPSCO argues that Article 5.1's phrase "kilowatt hour price_s_" indicates application to both the Energy Charge and the Demand Charge because the same price is specified for all five of the time periods provided for under the Energy Charge, so these could not be described in the plural. (Appellant's Br. at 9-10.) U.S. Steel counters that though the number is the same for each period, it clearly includes five distinct prices for the Energy Charge, which allows for the plural. (App. at 33-34, Appellee's Br. at 23.) Additionally, the Contract provided for the equal meaning of plural and singular in Article 1 definitions. (App. at 29.) In

light of these considerations and the deference owed to the Commission, NIPSCO's assertion does not persuade us that the Commission's interpretation of the Contract is unreasonable.

None of the Commission's conclusions run afoul of reasonable application of the well-established principles of contract law.

### III.    Conclusion

We affirm the Commission's order.

Dickson, Boehm, and Rucker, JJ., concur.
Sullivan, J., would have denied transfer, believing the analysis and conclusion of the Court of Appeals to be correct.